Case Nos. 18-16303; 18-17275

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FRED BOWERMAN; JULIA BOWERMAN
on behalf of themselves and others similarly situated,

*Plaintiffs-Appellees*,

v.

FIELD ASSET SERVICES, INC.; FIELD ASSET SERVICES, LLC,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
(The Honorable William H. Orrick) Case No. 3:13-cv-00057-WHO

**BRIEF OF *AMICI CURIAE* CALIFORNIA EMPLOYMENT LAWYERS'
ASSOCIATION, LEGAL AID AT WORK, NATIONAL EMPLOYMENT
LAW PROJECT, ASIAN AMERICANS ADVANCING JUSTICE-ASIAN
LAW CAUCUS IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION
FOR REHEARING OR REHEARING EN BANC AND FOR
CERTIFICATION OF QUESTIONS TO THE CALIFORNIA SUPREME
COURT**

Aaron D. Kaufmann, SBN 148580
LEONARD CARDER, LLP
1999 Harrison St., Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com

Catherine Ruckelshaus
National Employment Law Project
90 Broad Street
Suite 1100
New York, NY 10004
Telephone: (212) 285-3025
cruckelshaus@nelp.org

George A. Warner, SBN 320241
Legal Aid At Work
180 Montgomery Street
Suite 600
San Francisco, CA 94104
Telephone: (415) 864-8848
Facsimile: (415) 593-0096
gwarner@legalaidatwork.org

Winifred Kao, SBN 241473
Asian Americans Advancing Justice-
Asian Law Caucus
55 Columbus Ave.
San Francisco, CA 94111
Telephone: (415) 896-1701
Facsimile: (415) 896-1702
winifredk@advanceingjustice-alc.org

## CORPORATE DISCLOSURE STATEMENT (FRAP 29(a)(4)(A))

Pursuant to Federal Rules of Appellate Procedure 29(a)(4)(A), undersigned counsel for amici makes the following disclosures: The California Employment Lawyers Association, Legal Aid At Work, National Employment Law Project, and Asian Americans Advancing Justice-Asian Law Caucus hereby certify they have no parent corporations, have no stock, and hence no public company owns 10% or more of their stock.

 */s/ Aaron Kaufmann*
Aaron Kaufmann

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT (FRAP 29(A)(4)(A)).......................2

*AMICI CURIAE* STATEMENTS OF INTEREST & CONSENT TO FILE ............7

NON-AFFILIATION WITH PARTIES ...................................................................10

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................11

ARGUMENT ............................................................................................................14

A.  The Court Should Reconsider Its Predominance Analysis so as to Factor in Common Issues Regarding FAS's "Independent Contractor" Defense............14

B.  The Court Should Reconsider Whether the ABC Test Should Apply in the "Joint Employer" Context ..................................................................................23

CONCLUSION .........................................................................................................28

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. FedEx Ground Package Sys., Inc.*,
   765 F.3d 981 (9th Cir. 2014) ........................................................ 18, 27

*Alexander v. Fedex Ground Package Sys., Inc.*,
   No. 05-CV-00038-EMC, 2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ...........19

*Alfred v. Pepperidge Farm, Inc.*,
   322 F.R.D. 519 (C.D. Cal. 2017), modified,
   No. LACV1407086JAKRZX, 2017 WL 5665019 (C.D. Cal. July 13, 2017) .....16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ............................................................................22

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal. 4th 522 (2014) ................................................................. 15-16

*Baylor v. Homefix Custom Remodeling Corp.*,
   443 F. Supp. 3d 598 (D. Md. 2020) ....................................................19

*Butler v. DirectSAT USA, LLC*,
   47 F. Supp. 3d 300 (D. Md. 2014) .......................................................20

*Carr v. Flowers Foods, Inc.*,
   No. CV 15-6391, 2019 WL 2027299 (E.D. Pa. May 7, 2019) ...........................19

*Costello v. BeavEx, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) ...........................................................19

*Dynamex Operations West, Inc. v. Superior Court*,
   4 Cal.5th 903 (2018) .................................................................... *passim*

*Fleming v. Matco Tools Corp.*,
   No. 19-CV-00463-WHO, 2021 WL 673445 (N.D. Cal. Feb. 21, 2021) ....... 18, 26

*Guifu Li v. A Perfect Franchise, Inc.*,
   No. 5:10-CV-01189-LHK, 2011 WL 4635198 (N.D. Cal. Oct. 5, 2011) ...........17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...........................................................22

*Hogan v. InStore Grp., LLC*,
   512 F. Supp. 3d 157 (D. Mass. 2021) ................................................19

*In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*,
   273 F.R.D. 424 (N.D. Ind. 2008) .......................................................17

**Cases (cont'd)**

*James v. Uber Techs. Inc.*,
   338 F.R.D. 123 (N.D. Cal. 2021)..........................................................................18

*Jones v. Cruisin' Chubbys Gentlemen's Club*,
   No. 17-CV-125-JDP, 2018 WL 1175412 (W.D. Wis. Mar. 6, 2018) .................20

*Karl v. Zimmer Biomet Holdings, Inc*,
   No. C 18-04176 WHA, 2020 WL 4340172 (N.D. Cal. July 28, 2020)...............18

*Ludlow v. Flowers Foods, Inc.,*
   No. 18CV1190-JO-JLB, 2022 WL 2441295 (S.D. Cal. July 5, 2022)................17

*Martinez v. Flower Foods, Inc.,*
   2016 WL 10746664 (C.D. Cal. Feb. 1, 2016) ................................... 16, 23, 24, 25

*Moreno v. JCT Logistics, Inc.,*
   No. EDCV172489JGBKKX, 2019 WL 3858999 (C.D. Cal. May 29, 2019)......16

*Mullen v. Treasure Chest Casino, LLC*,
   186 F.3d 620 (5th Cir. 1999) .............................................................................22

*Narayan v. EGL, Inc.*,
   616 F.3d 895 (9th Cir. 2010) .............................................................................15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .............................................................................15

*Owino v. CoreCivic, Inc.*,
   36 F.4th 829 (9th Cir. June 3, 2022)........................................................ 21-22, 23

*Rehberg v. Flowers Baking Co. of Jamestown*,
   2015 WL 1346125 (W.D.N.C. March 23, 2015)................................................20

*Ruiz v. Affinity Logistics Corp*.,
   754 F.3d 1093 (9th Cir. 2014) .................................................................... 18, 26

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations,*
   48 Cal. 3d 341 (1989) ............................................................................... 16, 18

*Sales v. United Rd. Servs., Inc*.,
   No. 19-CV-08404-JST, 2022 WL 1601416 (N.D. Cal. Mar. 29, 2022)......... 17-18

*Shepard v. Lowe's HIW, Inc.*,
   2013 WL 4488802 (N.D. Cal. Aug. 19, 2013) ...................................................17

*Smith v. Cardinal Logistics*,
   2008 WL 4156364 (N.D. Cal. Sept. 5, 2008)....................................................17

**Cases (cont'd)**

*Soares v. Flowers Foods, Inc.*,
  320 F.R.D. 464 (N.D. Cal. 2017)...........................................................................26

*Tyson Foods Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016).............................................................................................22

*Vazquez v. Jan-Pro Franchising Intl., Inc.*,
  986 F.3d 1106 (9th Cir. 2021) ............................................................... 24, 27, 28

*Villalpando v. Exel Direct Inc.*,
  303 F.R.D. 588 (N.D. Cal. 2014).........................................................................17

*Weckesser v. Knight Enterprises S.E., LLC*,
  391 F. Supp. 3d 529 (D.S.C. 2019)                19-20

*Williams v. Jani-King of Philadelphia, Inc.*,
  837 F.3d 314 (3rd Cir. 2016) ...............................................................................19

**Statutes**

California Labor Code
  § 2810.3.................................................................................................................25

**Other Authorities**

Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule,
  80 Fed. Reg. 40,939 (July 30, 2021).....................................................................25

**AMICI CURIAE STATEMENTS OF INTEREST & CONSENT TO FILE**

California Employment Lawyers Association ("CELA") is an organization of California attorneys whose members primarily represent employees in a wide range of employment cases, including individual, class, and representative actions enforcing California's wage and hour laws. CELA has a substantial interest in protecting the statutory and common law rights of California workers and ensuring the vindication of the public policies embodied in California employment laws. In particular, CELA's members prosecute California wage and hour claims on behalf of workers who have been misclassified as "independent contractors." The organization has taken a leading role in advancing and protecting the rights of California workers, which has included submitting amicus briefs and letters and appearing before the California Supreme Court and Ninth Circuit Court of Appeal in employment rights cases, including several involving "independent contractor" misclassification claims.

The National Employment Law Project ("NELP") is a non-profit legal organization with over 50 years of experience advocating for the employment and labor rights of low-wage and unemployed workers. NELP seeks to ensure that all employees, and especially the most vulnerable ones, receive the full protection of labor laws, and that employers are not rewarded for skirting those basic rights. NELP has offices in California, and has litigated directly and participated as

amicus in numerous cases and has provided state and U.S. Congressional testimony addressing the issue of employment relationships and independent contractors, including hybrid joint employer and independent contractor misclassification arrangements, under the Fair Labor Standards Act and state labor standards. NELP has a strong interest in this case because of the impacts of the employer's unilaterally-imposed arrangements that carve out workers from labor protections and the impacts of those on law-abiding companies, on low-wage and immigrant workers, and their communities.

Legal Aid at Work is a San Francisco-based, non-profit public interest law firm founded in 1916 as the first legal services organization west of the Mississippi. Legal Aid at Work has for decades advocated on behalf of the workplace rights of members of historically underrepresented communities, including persons of color, women, immigrants, and individuals with disabilities. Legal Aid at Work regularly represents workers who have been misclassified as independent contractors, and as a result have been denied the rights protected by California's Labor Code, including the right to the minimum wage, overtime, and reimbursement of reasonable business expenses.

Asian Americans Advancing Justice - Asian Law Caucus (ALC) was founded in 1972 with a mission to promote, advance, and represent the legal and civil rights of Asian and Pacific Islanders, with a particular focus on low-income

members of those communities. Advancing Justice - ALC is part of a national affiliation of Asian American civil rights groups, with offices in Los Angeles, Chicago, Atlanta and Washington DC. Advancing Justice - ALC has a long history of protecting low-wage immigrant workers through direct legal services, impact litigation, community education, and policy work. Advancing Justice - ALC's regular caseload includes wage and hour misclassification and class action cases.

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amici curiae* submit this brief without an accompanying motion for leave to file or leave of court because all parties have consented to its filing.

## NON-AFFILIATION WITH PARTIES

Pursuant to Rule 29 of the Federal Rules of Appellate Procedures, the *amici curiae* herein represent that no party's counsel authored the brief in whole or in part or contributed money intended to fund preparing or submitting the brief. No person, other than *amici*, its members, or its counsel, contributed money intended to fund preparing or submitting the brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

*Amici curiae* California Employment Lawyers Association, National Employment Law Project, Legal Aid at Work, and Asian Americans Advancing Justice-Asian Law Caucus (collectively "*Amici")* submit the following in support of Plaintiffs-Appellants' petition for rehearing, as each of the *amici* have sought through litigation and other advocacy to secure work place protections for workers misclassified as "independent contractors." While *amici* support rehearing as to all four issues identified in the petition, they write here to address: (1) the Court's omission of the "independent contractor" misclassification issue in reviewing the trial court's predominance analysis on class certification; and (2) the Court's ruling that the ABC test for "independent contractor" status does not apply in the "joint employer" context.

According to the U.S. Department of Labor, "The misclassification of employees as independent contractors is one of the most serious problems facing affected employees, employers and the U.S. economy."[1] The DOL explains:

> Misclassified workers are denied basic workplace protections including rights to minimum wage and overtime pay, making it harder for them to support themselves and their families. Lower pay caused by misclassification reduces workers' purchasing power, which undermines the entire economy. Meanwhile, employers who comply with the law are at a competitive disadvantage when competing against employers who

---

[1] https://blog.dol.gov/2022/06/03/misclassification-of-employees-as-independent-contractors-under-the-fair-labor-standards-act (as of August 15, 2022).

misclassify employees and pay them less than the law requires and fail to provide other employment-based worker protections. [2]

Independent contractor misclassification costs federal and state governments billions of dollars in lost tax revenues annually and suppresses workers' wages.[3]

The California Supreme Court, in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal.5th 903 (2018), recognized the societal harm caused by "independent contractor" misclassification:

> [T]he relevant regulatory agencies of both the federal and state governments have declared that the misclassification of workers as independent contracts rather than employees is a very serious problem, depriving federal and state governments of billions of dollars in tax revenue and millions of workers of the labor law protections to which they are entitled.

*Id.* at 913. Against this backdrop, the court in *Dynamex* announced a stringent ABC test to determine when a hiring entity can lawfully treat a worker as an "independent contractor," unprotected by California's wage orders.

As *amici* can attest and legions of cases document, hiring entities typically proclaim workers to be "independent contractors" through form contracts the hirers draft and that workers must sign in order to obtain the work. In many instances, the workers entering into these arrangements have little or no prior business experience. Also, the signatory workers are often new immigrants, with limited

---

[2] *Id.*
[3] https://s27147.pcdn.co/wp-content/uploads/Independent-Contractor-Misclassification-Imposes-Huge-Costs-Workers-Federal-State-Treasuries-Update-October-2020.pdf.

English ability. Many times, the workers are encouraged if not required to form a business entity—such as an LLC or corporation—to enter the contract, thereby inserting a layer between the hirer and the individuals performing the work. The contracts also typically afford companies that engage the work broad rights to control the work, require the workers to bear the costs of the instrumentalities for the job, and impose compensation schemes and related policies that afford little or none of the employee benefits or protections required by wage and hour laws.

Defendants-Appellants Field Asset Services' contractual arrangements with its "vendors" are typical of the independent contractor models *amici* have seen. In order to perform the work, the individual had to sign a form contract drafted by FAS. SER2196-2209. The "vendor" entering into the contract had to be a "business," SER2199-2202, and, by the contract terms was deemed "independent contractor." SER2196-2209. The contract made plain the "vendor" was financially responsible for all instrumentalities of the job and provided no bonus pay for overtime worked. *Id*.

While FAS's contract was common to the 156 putative class members here, labeled the vendors "independent contractors," and included other terms that, on their face, do no comport with the law, this Court reversed the entirety of the trial court's class certification order. In so doing, the Court, among other things: (1) eschewed considering the common issues regarding the "misclassification"

allegations because it summarily concluded there was no showing that the misclassification caused the wage and hour violations, Op. 18-19; and (2) held the ABC test for "independent contractor" status does not apply in this "joint employment" setting, Op. 26. Ignoring the central issue of "misclassification" in the class treatment predominance analysis marks a sharp departure from the paradigm by which "independent contractor" misclassification cases have been litigated. Rejecting the ABC test in a joint employment setting also conflicts with well-established wage and hour principals and recent Ninth Circuit recent precedent, and encourages companies like FAS to insert an additional middleman or other structure between it and its workers. A hiring entity should not be able to evade work place protection laws by simply having the worker form a shell business. If unchecked, the subject decision would undermine workers' ability to address the significant societal problem of "independent contractor" misclassification.

## ARGUMENT

### A. The Court Should Reconsider Its Predominance Analysis so as to Factor in Common Issues Regarding FAS's "Independent Contractor" Defense

In concluding common issues do not predominate, the Court sidestepped the central issue of the case: "We need not decide whether common evidence can prove that FAS has a uniform policy of misclassifying its vendors." Op. 19. This deviates from how misclassification cases are litigated and decided in this Circuit

and beyond. Whether defendant hirers have misclassified plaintiff workers is "the central issue" in these cases, and thus, whether that issue is capable of class wide resolution is key to predominance analysis. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022) (predominance shown where central issue capable of class wide resolution outweighs individual issues). FAS, like other companies, relied on the "independent contractor" classification to justify ignoring workplace protections—in this case, California's expense reimbursement and overtime provisions. If they can prove the "independent contractor" defense,[4] they defeat all wage and hour claims. Given misclassification is the gateway to FAS's liability, the Court should reconsider its conclusion that the district court abused its discretion in determining the putative class members have not necessarily suffered damages traceable to the alleged misclassification.

In cases where hiring entities have relied on the "independent contractor" classification to justify ignoring employee wage and hour provisions, as is the case here, the litigation, and, in particular, class certification, has turned on the lawfulness of such classification. For instance, in *Ayala v. Antelope Valley*

---

[4] Under California law, once the worker shows they have performed services for the hirer, the hirer must show the worker served as an "independent contractor" to avoid complying with work place protection provisions. *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010); *Dynamex*, 4 Cal.5th at 957, n. 24.

*Newspapers, Inc.,* 59 Cal. 4th 522 (2014), the California Supreme Court upheld

class certification of expense reimbursement, overtime and other wage and hour

claims under California law, finding such treatment was well-justified by the

common issues arising from the question of employment status under *S. G. Borello*

*& Sons, Inc. v. Dep't of Indus. Relations,* 48 Cal. 3d 341, 350 (1989). The Supreme

Court noted:

> The trial court and Court of Appeal correctly recognized *as the*
> *central legal issue whether putative class members are*
> *employees for purposes of the provisions under which they sue.*
> If they are employees, Antelope Valley owes them various duties
> that it may not have fulfilled; if they are not, no liability can
> attach.

*Id.* at 530 (emphasis added). Similarly, prior to *Dynamex,* courts in the Ninth

Circuit frequently granted class certification in independent contractor

misclassification wage and hour cases because they found employment status to be

the gateway issue and susceptible to class wide resolution under the *Borello*

factors.[5] *See, e.g., Alfred v. Pepperidge Farm, Inc.*, 322 F.R.D. 519, 539 (C.D. Cal.

2017), modified, No. LACV1407086JAKRZX, 2017 WL 5665019 (C.D. Cal. July

---

[5] Courts have also denied class certification in independent contractor cases
because individual issues predominated as to the employment status question;
however, in those instances too, the courts focused on whether misclassification
could be adjudicated class wide. *See, e.g., Moreno v. JCT Logistics, Inc.,* No.
EDCV172489JGBKKX, 2019 WL 3858999, at *13 (C.D. Cal. May 29, 2019);
*Martinez v. Flower Foods, Inc.,* 2016 WL 10746664, at *13 (C.D. Cal. Feb. 1,
2016).

13, 2017); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 610 (N.D. Cal. 2014) (certifying class of persons who "personally provided delivery services for [Defendant]"); *Shepard v. Lowe's HIW, Inc.*, 2013 WL 4488802 (N.D. Cal. Aug. 19, 2013); *Guifu Li v. A Perfect Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2011 WL 4635198, at *7 (N.D. Cal. Oct. 5, 2011); *Smith v. Cardinal Logistics*, 2008 WL 4156364, at *1 (N.D. Cal. Sept. 5, 2008) (certifying delivery driver class). *See also In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 273 F.R.D. 424, 458-459 (N.D. Ind. 2008) (certifying California wage and hour claims stemming from allegation FedEx misclassified its drivers as independent contractors).

In *Dynamex,* the California Supreme Court applied the ABC test in upholding class treatment of claims "based on alleged violations of the obligations imposed by the wage order," because it found commonality of interest over whether drivers are employees or independent contractors. 4 Cal.5th at 966-67. Specifically, the court found it was "clear" there was sufficient commonality of interest as to whether drivers met part B or part C of the ABC test to support class certification. *Id.* at 966. Since *Dynamex*, courts in the Ninth Circuit have continued to certify California wage and hour class actions in the misclassification context because of the common issues raised under the ABC test. *See, e.g., Ludlow v. Flowers Foods, Inc.,* No. 18CV1190-JO-JLB, 2022 WL 2441295, at *7 (S.D. Cal. July 5, 2022); *Sales v. United Rd. Servs., Inc.*, No. 19-CV-08404-JST, 2022 WL

1601416, at *4 (N.D. Cal. Mar. 29, 2022); *James v. Uber Techs. Inc.*, 338 F.R.D. 123 (N.D. Cal. 2021). *See also Fleming v. Matco Tools Corp.*, No. 19-CV-00463-WHO, 2021 WL 673445, *5-11 (N.D. Cal. Feb. 21, 2021) (finding, under either the *Borello* or ABC test, common issues predominate with regard to "the threshold question of whether the putative class members were improperly classified as employees"); *Karl v. Zimmer Biomet Holdings, Inc*, No. C 18-04176 WHA, 2020 WL 4340172, *6 (N.D. Cal. July 28, 2020) (finding, under *Borello* and *Dynamex,* that common questions predominate "on the key question of misclassification").

The nexus between "misclassification" and wage and hour liability has been clear in other Ninth Circuit precedent as well. In *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093 (9th Cir. 2014), the Ninth Circuit explicitly acknowledged that employment status is the linchpin to liability under wage and hour provisions where workers had been uniformly classified as independent contractors: "*Ruiz's* claims—Affinity's wrongfully classifying the drivers as independent contractors; Affinity failing to pay drivers sick leave, vacation, holiday, and severance wages; and Affinity improperly charging drivers for workers' compensation insurance—turn on whether the drivers are independent contractors or employees of Affinity." *Id.* at 1099. In a similar setting, the Ninth Circuit held, as a matter of law and *on a class wide basis*, that FedEx drivers were employees under *Borello* for purposes of California's wage and laws. *Alexander v. FedEx Ground Package Sys., Inc.*, 765

F.3d 981 (9th Cir. 2014). That ruling led to a class wide settlement for over 2,000

drivers. *Alexander v. Fedex Ground Package Sys., Inc.*, No. 05-CV-00038-EMC,

2016 WL 1427358, at *1-2 (N.D. Cal. Apr. 12, 2016).

In "misclassification" litigation, courts in other circuits have also focused on

the commonality of issues generated by the employment status question when

considering class and collective action treatment. *See, e.g., Williams v. Jani-King

of Philadelphia, Inc.,* 837 F.3d 314 (3rd Cir. 2016) (certifying wage claims under

Pennsylvania law, where common issues of employment status under common law

test predominate); *Costello v. BeavEx, Inc*., 810 F.3d 1045, 1060–61 (7th Cir.

2016) (vacating district court's denial of class certification, where employment

status under Illinois's multi-factor test generated common issues); *Hogan v. Instore

Grp., LLC*, 512 F. Supp. 3d 157, 190 (D. Mass. 2021) (granting class certification

on Massachusetts wage and hour claims, where "[t]he central issue of classification

as a statutory employee — irrespective of correlative attributes of an independent

contractor — predominates"); *Baylor v. Home fix Custom Remodeling Corp*., 443

F. Supp. 3d 598, 607 (D. Md. 2020) (granting conditional collective action

certification); *Carr v. Flowers Foods, Inc.*, No. CV 15-6391, 2019 WL 2027299, at

*5-6 (E.D. Pa. May 7, 2019) (denying decertification of a collective action where

plaintiffs alleged independent contractor misclassification); *Weckesser v. Knight

Enterprises S.E., LLC*, 391 F. Supp. 3d 529, 534 (D.S.C. 2019) (granting final

collective action certification); *Jones v. Cruisin' Chubbys Gentlemen's Club*, No. 17-CV-125-JDP, 2018 WL 1175412, at *3 (W.D. Wis. Mar. 6, 2018) (granting motion for class cert, and denying motion for collective action decertification, where state and federal wage and hour claims turned on independent contractor misclassification allegations); *Rehberg v. Flowers Baking Co. of Jamestown*, 2015 WL 1346125, *8 (W.D.N.C. March 23, 2015) (certifying North Carolina wage and hour claims for distributors alleging independent contractor misclassification); *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 311 (D. Md. 2014) (citations omitted) (granting collective action status, where "the meaningful nexus is the Plaintiffs' classwide treatment as independent contractors subject to similar oversight, direction").

That courts focus on employment status at the class and/or collective action stage in independent contractor misclassification litigation is well-justified, because, typically, that is the only substantive issue in dispute. Companies often turn to an "independent contractor" model to, in part, avoid the expense and effort it takes to comply with workplace protection laws, because by definition, an "independent contractor" is not a covered employee. Often one of the most significant costs savings is that "independent contractors" must pay for their work-related expenses, such as providing their own vehicles, other equipment, and various forms of insurance, including workers' compensation, which is one of the

most expensive in hazardous jobs like the ones in this case. This transferring of work-related risk and expenses from hirer to hiree is typically made plain on the face of a take-it-or-leave-it form contract, as did FAS in this case. SER2199-2200. Similarly, these same form agreements typically set forth a uniform compensation scheme that features some sort of production-based pay—such as, by the job, unit produced, percentage of the delivery tariff, or commission—and does not include *any* additional compensation for overtime worked. That too is the case here. SER2196-2209. Moreover, in litigating these cases, *amici* have found defendants readily admit or stipulate in litigation that they do *not* reimburse the subject workers for their work-related expenses and make no effort to comply with overtime, health and safety, or other wage and hour laws. And when asked why, in discovery, they typically respond, because they believe the workers are "independent contractors."

Despite this misclassification litigation paradigm by which the employee/independent contractor issue serves as the fulcrum, the Court here explicitly omitted this central question from its predominance analysis. Op. 19. Instead, the Court focused on whether *each* class member can prove they have a viable claim at all. Op. 19-20.

Such reframing conflicts with class certification principles and the Ninth Circuit's recent decision in *Owino v. CoreCivic, Inc.*, 36 F.4th 829, 847 (9th Cir.

June 3, 2022). There, in considering class treatment of work-related claims brought

by immigration "detainees," this circuit followed the Supreme Court's teachings in

*Tyson Foods Inc. v. Bouaphakeo*, 577 U.S. 442 (2016). *Id. Tyson* instructs:

> [t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

577 U.S. at 453 (internal citations and quotation marks omitted). *See also Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When common questions

present a significant aspect of the case and they can be resolved for all members of

the class in a single adjudication, there is clear justification for handling the dispute

on a representative rather than on an individual basis") (internal citations omitted).[6]

In upholding class certification in *Owino*, the Ninth Circuit identified the

"misclassification" of detainees as "volunteers" as a central common issue

underlying the work-related claims averred. 36 F.4th at 846, 848. The court

---

[6] The Court's predominance analysis not only omitted the central issue of whether plaintiffs were misclassified, but also misstates the standard for predominance in concluding Plaintiffs failed to "establish FAS's liability for failing to pay overtime wages or to reimburse business expenses by common evidence." Op. at 19. "Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 626 (5th Cir. 1999) (approving certification where trial was bifurcated between common issues and individualized issues).

concluded: "There is a clear line of causation between the alleged misclassification of detainee employees as 'volunteers' and the deprivation of earnings they may have suffered as a consequence of the violation of California wage and hour laws." *Id.* at 848.

As was the misclassification question in *Owino,* the "independent contractor" misclassification in the present matter is the central, common issue, because, without employment status, all of plaintiffs' claims fail; with it, liability is certain on the face of FAS's contract, as it makes the workers bear work-related expenses and pays nothing for overtime. Thus, given the centrality of the "independent contractor" misclassification theory in this case, the Court should reconsider whether, under a proper predominance analysis, common issues concerning the putative class members' employment status do not justify certification of at least that issue if not the underlying claims.

### B. The Court Should Reconsider Whether the ABC Test Should Apply in the "Joint Employer" Context

The Court should also reconsider its ruling "that *Dynamex* does not apply to joint employment claims" and guidance that follows therefrom that the ABC would not apply where putative class members were employees of a business entity that contracted as the FAS "vendor." Op. 26-28. As Plaintiffs-Appellees make plain, such a ruling conflicts with *Dynamex* and *Martinez v. Combs*, 49 Cal.4th 35 (2010). *See* PET 18-19. The decision here also does not square with the Ninth

Circuit's recent decision in *Vazquez v. Jan-Pro Franchising Intl., Inc.*, 986, F.3d 1106 (9th Cir. 2021), where the court *did* apply the ABC test in a joint employer setting.

Both *Dynamex* and *Martinez* interpret the language of California's wage orders; those orders do not include a definition for a "joint employer." They include a definition of an "employer," which in turn is controlled by the definition of "employ." *Martinez*, 49 Cal.4th at 49. *Martinez* makes clear that it did not merely address "joint employment." It was answering the broader question: "How then do we define the employment relationship, and thus identify the persons who may be liable as employers . . . ?" 49 Cal.4th at 51. *Dynamex*, following *Martinez*, rejected the idea that the "suffer and permit" language was limited to the joint employment context, 4 Cal.5th at 944-45, and then interpreted the "suffer or permit" definition of employ to require an entity to disprove the three elements of the ABC test. *Id.* at 964.

Applying the same test also makes sense as a means of effectuating the legislative purpose of the "suffer or permit" standard. As the Court recognized, when a hiring entity claims that it is not an employer because the worker was an independent contractor, as in *Dynamex*, the question is whether the worker can recover at all. The Court here incorrectly believed that the ills of misclassification do not appear in joint employment cases. Op. at 26-27. In fact, the opposite is the

case. Employees attempt to make an additional employer liable for wage and hour protections precisely because a meaningful remedy for wage and hour violations is not otherwise available, because the other employer "went bankrupt," was unable to pay a meaningful share of the unpaid wages, "disappears or refuses to pay." Rescission of Joint Employer Status Under the Fair Labor Standards Act Rule, 80 Fed. Reg. 40,939, 40,952 (July 30, 2021). *See also Martinez*, 49 Cal. 4th at 42 (noting that strawberry grower filed for bankruptcy); Labor Code § 2810.3(a)(6) (codifying B prong prior to judicial adoption of ABC test to make liable certain secondary employers).

As California law does not provide a separate test for determining the validity of the "independent contractor" classification in a "joint employer" context, it is not clear how liability would be assessed on remand. Surely an entity that benefits from the work, as FAS did here, should not be able to avoid liability by simply inserting another entity between it and the individual performing the work. Elevating the import of such corporate formalities would obscure the realities of the working relationship and allow circumvention of California's work place protection laws. That result would contradict the legislative remedial purpose served by the intended broad coverage of California's wage and hour laws, *see Dynamex*, 4 Cal.5th at 953-954, and would create tension with prior Ninth Circuit precedent.

Often, in the "independent contractor" contractual arrangements challenged in wage and hour litigation, the hiring entity contracts not with an individual worker but rather with a business entity that is owned by that worker. Prior decisions have documented such realities, *see, e.g., Ruiz,* 754 F.3d at 1096; *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 471 (N.D. Cal. 2017); *Fleming,* 2021 WL 673445, *2; and *amici* have challenged this model in numerous cases. Frequently, the hirer requires the worker to have a business in order to perform the work. In some instances, the hirer has even facilitated the formation of the worker's business, referring the worker to a third-party vendor to facilitate with setting up the business entity and obtaining the required licenses and various forms of insurance. In most instances, the business through which the worker performs the services is owned by the worker and/or the worker's spouse, and holds no assets other than the instrumentalities required under the subject contract.

FAS's relationship with its "vendors" is substantively similar to the model described above. FAS required all "vendors" to operate as businesses. Specifically, FAS required all workers to provide a business name and address and to obtain a business license. SER2139-40; SER2209. FAS also required workers to obtain commercial general liability, workers' compensation, and commercial auto insurance at required minimum coverage amounts, and required that FAS be listed as an additional insured. SER2199-2200.

The realities of the working relationship here—where the individuals provide services that are integral to the hirer's business—would be ignored if the hirer could avoid application of the ABC test by simply requiring the worker to contract under a business. *Dynamex* adopted the narrow ABC test for "independent contractor" status in order to protect against such easy circumvention of employer obligations under California's wage orders. *See* 4 Cal.5th at 953-954. Moreover, the Ninth Circuit and the California Supreme Court have recognized that coverage under California's worker protections cannot be avoided through use of labels in a contract or other subterfuges. *Alexander v. FedEx*, 760 F.3d at 989, 996; *Dynamex*, 4 Cal. 5th at 961. Instead, "[w]hat matters is what the contract, in actual effect, allows or requires." *Alexander*, at 989.

The ruling that the ABC test does not apply to "joint employment claims" is also in tension with the Ninth Circuit's decision in *Vazquez v. Jan-Pro,* 986 F.3d 1106. There defendant Jan-Pro, a janitorial cleaning business, contracted with "master franchisees," who then sold "unit franchises" to janitors performing the cleaning services through contracts deeming them "independent contractors." *Id.* at 1111-12. When the janitors sued Jan-Pro on the theory that they had been misclassified as "independent contractors," the Ninth Circuit held that, "as a doctrinal matter, Jan-Pro could be Plaintiffs' employer under the ABC test even though it is not a party to any contract with Plaintiffs." *Id.* at 1124. It explained

that, under the ABC test, a hiring entity could be held liable as an employer even if that putative employee was providing a service to the hirer "*indirectly.*" *Id.* (emphasis in original).

The Ninth Circuit's holding in *Vazquez* differs from the suggestion that FAS could use their form contracts to evade application of the ABC test and thus responsibility for the workplace conditions they control by simply inserting intermediary entities in between themselves and their workers.

## CONCLUSION

In order to avoid conflicts with fundamental principles of class certification analysis, California wage and hour law, and prior Ninth Circuit precedent, the Court should reconsider the subject decision.

Dated: August 17, 2022                    Respectfully submitted,

By: */s/ Aaron Kaufmann*

Aaron Kaufmann, SBN 148580
LEONARD CARDER, LLP
1999 Harrison St., Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
egropman@leonardcarder.com

*Attorneys for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS AND TYPE-STYLE REQUIREMENTS

This document complies with Circuit Rule 29-2 because, excluding parts of the document exempted by Fed. R. App. P. 32(f) this brief contains 4,165 words.

This document complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this documents has been prepared in a proportionally spaced typeface using Microsoft Word 2016 using 14-point Times New Roman.

By: */s/ Aaron Kaufmann*
Aaron Kaufmann
LEONARD CARDER, LLP
1999 Harrison St., Suite 2700
Oakland, CA 94612

*Attorney for Amicus Curiae*
*California Employment Lawyers Association*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 17, 2022. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Aaron Kaufmann*
Aaron Kaufmann