Nos. 18-16303, 18-17275

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FRED BOWERMAN, JULIA BOWERMAN,
on behalf of themselves and others similarly situated,
*Plaintiffs-Appellees*,

v.

FIELD ASSET SERVICES, INC., FIELD ASSET SERVICES, LLC,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
(The Honorable William H. Orrick)

**BRIEF OF *AMICI CURIAE* IMPACT FUND, CENTRO LEGAL DE LA RAZA, DISABILITY RIGHTS CALIFORNIA, HOUSING AND ECONOMIC RIGHTS ADVOCATES, LAW FOUNDATION OF SILICON VALLEY, LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA, AND PUBLIC ADVOCATES, INC., IN SUPPORT OF PLAINTIFFS-APPELLEES' PETITION FOR REHEARING OR REHEARING EN BANC AND FOR CERTIFICATION OF QUESTIONS TO THE CALIFORNIA SUPREME COURT**

Lindsay Nako (SBN 239090)
Jocelyn D. Larkin (SBN 110817)
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, California 94704
Telephone: (510) 845-3473
lnako@impactfund.org

*Counsel for Amici Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A),

Amici Curiae Impact Fund, Centro Legal de la Raza, Disability Rights California,

Housing and Economic Rights Advocates, Law Foundation of Silicon Valley,

Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and Public

Advocates, Inc., represent that they do not have parent corporations or any publicly

held companies holding 10% or more of any stock.

Dated:  August 18, 2022          By:  /s/ Lindsay Nako

                                                      Lindsay Nako
                                                      IMPACT FUND
                                                      *Counsel for Amici Curiae*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF AUTHORITIES ................................................. iii

STATEMENT OF INTEREST ................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................5

ARGUMENT ..................................................................6

I.  The Panel Found No Predominance Because It Held Plaintiffs to the Wrong
    Standard of Proof for Class-Wide Liability..........................................6

    A. Determining Class-Wide Liability Does Not Require Individualized
       Inquiries in This Case........................................................6

    B. The District Court Properly Concluded that Common Questions of Law
       and Fact Predominate. ......................................................8

    C. The Panel Cast Individual Harm as Part of the Liability Analysis When
       It Is Properly Determined in a Separate Damages Analysis. .........................9

    D. Individualized Determinations Do Not Prevent Class Certification When
       Common Questions Predominate...............................................10

II. The Panel Entirely Ignored the District Court's Analysis and Findings and
    Replaced Them With Its Own Judgment..........................................12

    A. The Panel Fails to Identify Any Abuse of Discretion. .................................13

    B. The Panel's Critique of Manageability Is Not a Permissible Reason for
       Reversing Class Certification....................................................15

    C. The Panel Demonstrates Undue Skepticism of Class Member Testimony
       as Evidence of Individual Damages. ............................................17

CONCLUSION ...................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013).............................................................................11

*Bowerman v. Field Asset Servs., Inc.*,
   242 F. Supp. 3d 910 (N.D. Cal. 2017)......................................... passim

*Bowerman v. Field Asset Servs., Inc.*,
   No. 13-cv-00057, 2018 WL 3753054 (N.D. Cal. Aug. 8, 2018)................. passim

*Bowerman v. Field Asset Servs., Inc.*,
   39 F.4th 652 (9th Cir. 2022) ....................................................... passim

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ................................................... 15, 16

*Castillo v. Bank of America*,
   980 F.3d 723 (9th Cir. 2020) .......................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011)...................................................................7

*Int'l Bhd. of Teamsters v. U.S.*,
   431 U.S. 324 (1977)..................................................................18

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .....................................................13

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ......................................................10

*Noel v. Thrifty Payless, Inc.*,
   7 Cal. 5th 955 (2019) ..................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) .............................................. 6, 10, 11, 13

*Parra v. Bashas', Inc.*,
    536 F.3d 975 (9th Cir. 2008) ...............................................................13

*S.E.C. v. Phan*,
    500 F.3d 895 (9th Cir. 2007) ...............................................................18

*Sotelo v. MediaNews Grp., Inc.*,
    207 Cal. App. 4th 639 (2012) ................................................................7

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ..............................................................................11

*United States v. Shumway*,
    199 F.3d 1093 (9th Cir. 1999) .............................................................18

*Vaquero v. Ashley Furniture Indus., Inc.*,
    824 F.3d 1150 (9th Cir. 2016) .............................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..............................................................................17

*Wilson v. La Jolla Group*,
    61 Cal. App. 5th 897 (2021) ...................................................................7

**RULES**

Fed. R. Civ. P. 23(b)(3)................................................................ passim

Amici Curiae Impact Fund, Centro Legal de la Raza, Disability Rights California, Housing and Economic Rights Advocates, Law Foundation of Silicon Valley, Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and Public Advocates, Inc., are non-profit legal organizations that employ Federal Rule of Civil Procedure 23 to enforce the legal rights of low-income workers and residents of California.

The **Impact Fund** is a non-profit legal foundation that provides funding for impact litigation, offers innovative training and support, and acts as counsel in impact litigation across the country. The Impact Fund has served as class counsel in a number of major civil rights class actions before this Court, including cases enforcing workers' rights and challenging employment discrimination, wage-and-hour violations, and lack of access for people with disabilities. The Impact Fund has an interest in ensuring that class actions remain a robust vehicle for workers, consumers, and other underserved communities to vindicate their rights and enable greater access to justice.

Founded in 1969, **Centro Legal de la Raza** is a legal services agency protecting and advancing the rights of low-income and immigrant communities

---

[1] No party's counsel authored this brief in whole or in part. No counsel or party contributed money to fund its preparation or submission. No person other than amici and their counsel contributed money for its preparation or submission.

through legal representation, education, and advocacy.  By combining quality legal services with know-your-rights education and youth development, Centro Legal ensures access to justice for thousands of individuals throughout Northern and Central California.  Centro Legal's workers' rights practice provides legal assistance to hundreds of low-wage and immigrant workers each year, including class actions for workers potentially impacted by the legal issues in this case.

**Disability Rights California ("DRC")**, a non-profit legal advocacy organization established in 1978, is California's Protection & Advocacy system mandated under federal law to advance and defend the civil rights of people with all types of disabilities statewide.  DRC works in partnership with people with disabilities to achieve a society that values all people and supports their rights to dignity, equality of opportunity, choice, and quality of life.

**Housing and Economic Rights Advocates ("HERA")** is an Oakland-based legal services and advocacy non-profit dedicated to helping vulnerable Californians build a safe, sound financial future.  HERA represents California consumers in a wide range of consumer protection cases, including unfair debt collection, credit reporting, home sales solicitation, telemarketing, and student loan litigation.  HERA's consumer litigation practice includes consumer class actions. Recent examples include *Doskocz v. ALS Lien Services*, Contra Costa County Superior Court Case No. MSC17-01486 (class certified; class prevailed at trial);

*Norton v. LVNV Funding*, LLC, N.D. Cal. No. 18-cv-05051-DMR (class certified); *Hanson v. JQD, LLC* , N.D. Cal. No. 13-05377 RS (class certified); and *Herrera v. LCS Financial Services Corp.*, et al., N.D. Cal. No. C09-02843 (class certified).

**Law Foundation of Silicon Valley** is a non-profit corporation based in San José, California, focused on advancing the rights of under-represented individuals and families in Santa Clara County through legal services, strategic advocacy, and educational outreach. The Law Foundation of Silicon Valley serves more than 10,000 low-income individuals and families each year. Part of the Law Foundation's mission includes protecting the civil rights of individuals and groups in Santa Clara County who are underrepresented in the civil justice system through class action and impact litigation.

The **Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("LCCRSF")** works to advance, protect, and promote the legal rights of communities of color and low-income persons, immigrants, and refugees. Assisted by pro bono attorneys, LCCRSF provides free legal assistance and representation to individuals on civil legal matters through direct services, impact litigation, and policy advocacy. A substantial portion of our racial and economic justice work focuses on protecting the rights and wealth of unhoused, low-income, and communities of color. This includes regular class action litigation for damages and injunctive relief in both state and federal courts.

**Public Advocates, Inc.**, is a non-profit, public interest law firm and one of the oldest public interest law firms in the nation. Public Advocates uses diverse litigation and non-litigative strategies to handle exclusively policy and impact cases to challenge the persistent, underlying causes and effects of poverty and discrimination. Its work currently focuses on achieving equality in education, housing, and transportation; in the past, the organization has addressed systemic harms in employment, prisons, consumer rights, welfare benefits, and health care, among other issue areas.

**This brief is submitted with the consent of all parties and without a motion to request leave, pursuant to Federal Rule of Appellate Procedure 29(A)(2).**

## INTRODUCTION AND SUMMARY OF ARGUMENT

The panel erred in re-evaluating whether the class certified by the district court met the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 661-63 (9th Cir. 2022). It improperly reversed certification of the class, reasoning that determining the class-wide liability of Defendants-Appellants Field Asset Services, Inc. ("FAS") "would implicate highly individualized inquiries on whether that particular class member *ever* worked overtime or *ever* incurred any 'necessary' business expenses." *Id.* at 662.

The elements of a defendant's liability are defined by the claims asserted against it. The predominance analysis is intended to ensure that, in determining liability, "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Here, the elements of Plaintiffs-Appellees' claims for unpaid overtime and unreimbursed business expenses demand no individualized inquiry. Indeed, the district court granted summary judgment to the class relying entirely on common class-wide evidence. *Bowerman v. Field Asset Servs., Inc.*, 242 F. Supp. 3d 910, 936-938 (N.D. Cal. 2017). To the extent that individualized determinations are required to calculate class members' damages arising from FAS's violation of California's wage and hour laws, this Circuit has stated repeatedly, including sitting en banc

just a few months ago, that individualized damages determinations do not defeat

class certification. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*

*LLC*, 31 F.4th 651, 668-69 (9th Cir. 2022) (en banc).

In reversing class certification, the panel also failed to acknowledge or even

cite to the analysis and findings of the district court, which were documented in

four separate orders on class certification. The district court grappled with the

facts, law, and requirements of Rule 23 at every step of this litigation, including at

summary judgment and again after the bellwether trial on damages. In its last

order denying decertification, the court specifically addressed predominance and

acknowledged the complexities of proceeding as a class action. *Bowerman v.*

*Field Asset Servs., Inc.*, No. 13-cv-00057, 2018 WL 3753054, at *2 (N.D. Cal.

Aug. 8, 2018). Ultimately, however, it concluded that "in this case certification is

proper and the most equitable way to resolve the litigation." *Id*. at *3. This

holding is due significant deference, which the panel did not accord.

**ARGUMENT**

**I.  THE PANEL FOUND NO PREDOMINANCE BECAUSE IT HELD
PLAINTIFFS TO THE WRONG STANDARD OF PROOF FOR
CLASS-WIDE LIABILITY.**

**A.  Determining Class-Wide Liability Does Not Require
Individualized Inquiries in This Case.**

The panel erred when it held that the class must "establish by common

evidence either FAS's liability, or damages stemming from that alleged liability, to *individual* class members." *Bowerman*, 39 F.4th at 661 (emphasis added). This foundational premise is wrong.

Liability arises from violations of the law. "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Individual injury is not an element of FAS's liability for the alleged overtime and reimbursement violations. *See, e.g.*, *Bowerman*, 242 F. Supp. 3d at 946 ("Summary judgment [on the class's overtime and reimbursement claims] necessarily depends on finding that the vendors are employees as a matter of law. . . . [I]t is undisputed that FAS did not pay vendors' overtime nor did it reimburse them for business expenses.").

As the panel's own cited cases demonstrate, in misclassification class actions such as this, plaintiffs must show that defendants had policies or practices requiring employees to incur unpaid overtime or unreimbursed expenses. *Sotelo v. MediaNews Grp., Inc.*, 207 Cal. App. 4th 639, 654 (2012), *disapproved on other grounds by Noel v. Thrifty Payless, Inc.*, 7 Cal. 5th 955, 986 n.15 (2019) ("A class . . . may establish liability by proving a uniform policy or practice by the employer that has the effect on the group of making it likely that group members will work overtime hours without overtime pay[.]"); *Wilson v. La Jolla Grp.*, 61 Cal. App.

5th 897, 919 (2021) (seeking evidence that the employer "had any policy or practice requiring [plaintiffs] to incur expenses").

No showing of harm to individual class members is necessary to prove class-wide liability in this case.

### B. The District Court Properly Concluded that Common Questions of Law and Fact Predominate.

The district court held that Plaintiffs met their burden of demonstrating that FAS maintained common policies and practices that required vendors to work unpaid overtime and incur unreimbursed expenses. In the district court's second order denying decertification, the court explicitly held that "while the amount of overtime and expenses varied by class member, all were subject to those *common policies and practices* that generally *required* them to work overtime and expend their own money on business expenses that should have been reimbursed." *Bowerman*, 2018 WL 3753054, at *1 (emphasis added).

Plaintiffs demonstrated that FAS adopted a business model that required vendors to complete work within 72 hours, "exerted substantial pressure" to accept jobs that required "substantially more" than eight hours per day, and made vendors travel between job sites, perform work to FAS's specifications, and meet strict documenting and reporting requirements for projects in the evenings. *Id.*

Relying on *Castillo v. Bank of America*, the panel inexplicably "reverse[d] the class certification because the class members failed to demonstrate that FAS's

liability is subject to common proof." *Bowerman*, 39 F.4th at 662 (citing *Castillo*, 980 F.3d 723, 730 (9th Cir. 2020)).  In doing so, it ignored the district court's grant of summary judgment to the class, which found each element of FAS's legal liability satisfied through common class-wide evidence.  *See Bowerman*, 242 F. Supp. 3d at 916-923, 946.  The district court's findings were also confirmed by damage awards from the jury in the bellwether trial.  *Bowerman*, 2018 WL 3753054, at *2 ("Since FAS's first motion to decertify, a jury has resoundingly found that the vendors in the bellwether trial were each entitled to substantial damages[.]").

The question that the panel *should* have asked—whether the district court's finding of predominance was a permissible conclusion based on the record before it—is properly resolved in the affirmative.

### C.   The Panel Cast Individual Harm as Part of the Liability Analysis When It Is Properly Determined in a Separate Damages Analysis.

After concluding that common questions did not predominate because of the imagined threat of "highly individualized inquiries" into FAS's liability, the panel rejected the class's position that individualized issues were limited to damages. *Bowerman*, 39 F.4th at 662.  The panel described the class as "mischaracteriz[ing] an issue of individualized *liability* as an issue of individualized *damages*."  *Id.*  But a clear-eyed reading of the decision shows that the panel had it backward.  It

mischaracterized an issue of individualized *damages* as one of individualized *liability*.

Here, the district court properly resolved the question of FAS's liability and granted summary judgment to Plaintiffs based on common class-wide evidence. It required no individualized inquiries to conclude that FAS violated the law when it treated its vendors as employees, required them to work overtime and make regular business expenditures, and then did not pay them as the law required. *Bowerman*, 242 F. Supp. 3d at 946; *Bowerman*, 2018 WL 3753054, at *1.

The injuries suffered by individual members of the *Bowerman* class are relevant only to damages. Ninth Circuit precedent is consistent and clear that "the presence of individualized damages cannot, by itself, defeat class certification." *Bowerman,* 39 F.4th at 662 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)); *see also Olean Wholesale*, 31 F.4th at 669; *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). The panel does not appear to take issue with the precedent—it only fails to properly apply it.

### D. Individualized Determinations Do Not Prevent Class Certification When Common Questions Predominate.

Even if the panel was correct that the class claims required individualized showings of harm to establish liability, class certification would still be appropriate, as the district court concluded that significant common questions of law and fact predominate.

Earlier this year, this Court, sitting en banc, reviewed certification of classes alleging antitrust violations, which require individualized showings of injury and measurable damages to establish liability. *Olean Wholesale*, 31 F.4th at 666. The Court found that class certification was appropriate under Rule 23(b)(3) in part because common questions predominated over the individualized inquiries required to assess liability. *Id.* at 685. In reaching this conclusion, it specifically prohibited district courts from "declin[ing] to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions." *Id.* at 668.

The Court went on to quote the Supreme Court's ruling in *Tyson Foods, Inc. v. Bouaphakeo*, which endorsed the same principle:

> When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) *even though other important matters will have to be tried separately*, such as damages or some affirmative defenses peculiar to some individual class members.

*Olean Wholesale*, 31 F.4th at 668 (quoting *Tyson*, 577 U.S. 442, 453 (2016)) (emphasis added); *see also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions

11

'*predominate* over any questions affecting only individual [class] members.'")
(internal citations omitted).

Though individualized determinations of harm were not required for liability in the present case, they would not have prevented certification under Rule 23(b)(3) under the governing law of the Circuit.

## II.   THE PANEL ENTIRELY IGNORED THE DISTRICT COURT'S ANALYSIS AND FINDINGS AND REPLACED THEM WITH ITS OWN JUDGMENT.

The district court went to great lengths in granting and affirming class certification in the present case. It was called upon to review class certification *four separate times*. Over four separate orders—once denying class certification, once granting class certification, and twice denying decertification—the court spent considerable time analyzing predominance under Rule 23(b)(3). In its 2018 order denying decertification, which was dedicated entirely to predominance, the district court identified "novel issues" and a damages phase that proved "far messier than promised by plaintiffs' counsel." *Bowerman*, 2018 WL 3753054, at *1, *3. But the court again reviewed the record and concluded, nonetheless, that "class certification is proper and the most equitable way to resolve the litigation." *Id.* at *3.

The district court's determination is entitled to significant deference. *Olean Wholesale*, 31 F.4th at 669 ("A district court is in the best position to determine whether individualized questions, including those regarding class members' injury, will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3). . . . We uphold a district court's determination that falls within a broad range of permissible conclusions." (internal quotations omitted)); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017) ("We review a district court's decision to certify a class for abuse of discretion, and accord the district court noticeably more deference when reviewing a grant of class certification than when reviewing a denial." (internal quotations omitted)). Yet the panel failed to accord it any deference at all.

## A. The Panel Fails to Identify Any Abuse of Discretion.

According to the panel opinion, the district court abused its discretion by certifying the class despite the predominance of individualized questions. However, an abuse of discretion requires more than mere disagreement with a district court's outcome. An abuse of discretion occurs when a district court "relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them." *Just Film*, 847 F.3d at 1115 (quoting *Parra v.*

*Bashas', Inc.*, 536 F.3d 975, 977–78 (9th Cir. 2008)). The panel identified no such flaw in the district court's reasoning.

The panel opinion relies entirely on the party briefs on appeal to reverse class certification and accepts as true FAS's statement that "plaintiffs cannot prove, through common evidence, that class members worked overtime hours or that claimed expenses are reimbursable." *Bowerman*, 39 F.4th at 661. The panel ignores the district court's 2018 order denying decertification, where the court concluded "that the plaintiffs here showed that there was 'an employer policy or practice that generally required the class members to work overtime'" and detailed FAS's policies and practices from evidence submitted at class certification, which was "confirmed and amplified at trial." *Bowerman*, 2018 WL 3753054 at *1.

Without identifying any error on the part of the district court, the panel conducts what amounts to a *de novo* review of class certification, setting forth its own interpretation of the facts. The question before the panel was not whether the class satisfied Rule 23(b)(3)'s predominance requirement, *Bowerman*, 39 F.4th at 661–62, or whether "damages can be determined without excessive difficulty," *id.* at 663. The question was whether the district court's conclusions in favor of class certification were *an abuse of discretion*. The panel identifies no reason to answer that question in the affirmative.

**B.  The Panel's Critique of Manageability Is Not a Permissible Reason for Reversing Class Certification.**

The panel closes its discussion of class certification with a charge that "the class members [have not] shown that damages can be determined without excessive difficulty." *Id*.  Under the guise of predominance, the panel surfaces *manageability* concerns that contradict precedent and intrude upon district courts' ability to manage their own cases.

The Ninth Circuit has held—and the district court explicitly recognized—that manageability is not grounds for denying class certification.  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).  By reversing class certification because it deemed the damages phase to be excessively difficult, the panel here imposed an "administrative feasibility requirement" of the type that the Ninth Circuit rejected in *Briseno*.  *Id*.  Contrary to the panel's conclusion, determining damages can be both individualized and difficult without defeating predominance, as the district court found here.[2]

Assessing the manageability of a class action is squarely within the purview of district courts.  They are tasked with "balanc[ing] the benefits of class adjudication against its costs."  *Id*.  Rather than assess this in a vacuum, "Rule

---

[2] While there is a "manageability criterion" of the *superiority* requirement of Rule 23(b)(3), the requirement mandates only that courts consider "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  The district court did so, repeatedly and thoughtfully.

23(b)(3) calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy." *Id.* Because district courts have the benefit of this first-hand assessment, the Ninth Circuit has acknowledged: "We lack authority to substitute our judgment for theirs." *Id.*

Here, the district court repeatedly found that a class action was preferable to 156 individual trials. It successfully implemented a "variety of procedural tools" to "manage the administrative burdens of class litigation." *Id.* Proceeding as a class action allowed the court to resolve liability with a single ruling on a class-wide basis, relying entirely on common evidence of FAS's uniform policies. It then used a bellwether trial to successfully determine damages for the first eleven class members—a significant step toward the resolution of this litigation.

The panel reasoned that the damages phase was "excessively difficult" because it proved "messier than promised," as the court had to use "individual testimony of self-interested class members," which took eight days for the first eleven class members. *Bowerman*, 39 F.4th at 663. None of these is a valid reason for dismantling the court's rulings and work to date.

The panel may not have liked that the initial bellwether took eight days. It may not have liked that the district court relied on individual class member testimony. It may have judged the process to be unduly cumbersome. But the

district court openly grappled with the potential obstacles and found that, *despite* them, proceeding as a class action was proper and equitable. Indeed, leading up to its cursory statement that damages would be "far messier than promised," *Bowerman*, 2018 WL 3753054, at *3,—in the context of manageability—the court exhausted paragraphs explaining why the individual inquiries *still* "pale in comparison" to the common issues, *id.* at *2. Increasing judicial efficiency is a core purpose of Rule 23 and the district court's actions complied with Ninth Circuit precedent.

### C.    The Panel Demonstrates Undue Skepticism of Class Member Testimony as Evidence of Individual Damages.

The panel wrongly criticizes the use of class member testimony as a means of proving damages, commenting, "As it turns out, using the individual testimony of self-interested class members to calculate the overtime hours they worked and the business expenses they incurred isn't easy." *Bowerman*, 39 F.4th at 663. The panel then imposes a dramatic new standard—*proposed classes that may require individual class member testimony to determine damages should not be certified under Rule 23(b)(3). Id.* Such a standard departs from this Court's existing precedent, incentivizes employers not to keep records, and effectively closes the courthouse doors to groups of plaintiffs whose legal rights have been violated.

The Supreme Court has endorsed the use of individualized mechanisms to determine class member damages after a finding of liability. *Wal-Mart Stores, Inc.*

17

*v. Dukes*, 564 U.S. 338, 366-67 (2011) ("When the plaintiff seeks individual relief . . ., 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.'") (quoting *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 361 (1977)).

Contrary to the panel's assumption, the district court is not obligated to hold the same trials for all remaining class members. Taking the information gathered in the bellwether trial, the court and parties can now determine how to proceed most efficiently. The court could limit the time allowed for testimony, appoint a special master, ask class members to submit written testimony under penalty of perjury and allow FAS to contest damages where warranted, or any number of other options. The panel assumed that because "it has taken eight days to determine damages for only eleven of the 156 class members," it will be the same for all remaining class members. *Bowerman*, 39 F.4th at 663. This is an overly simplistic conclusion that is not the panel's to make.

Moreover, there is no basis for the panel's denigration of class member testimony. As this Court previously held, "[D]eclarations oftentimes will be 'self-serving'—'[a]nd properly so, because otherwise there would be no point in [a party] submitting [them]." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (quoting *United States v. Shumway*, 199 F.3d 1093, 1104 (9th Cir. 1999)). As in any other kind of trial, defendants have multiple options in the face of "self-

serving" testimony. They can argue that the testimony is not admissible, cross-examine the testifying class member, or introduce contradictory testimony. This is utterly routine trial practice.

Finally, the panel overlooks two important factors that led to the district court's reliance on individual class member testimony. As the district court noted, FAS kept no records of the hours that vendors worked or the expenses that they incurred. *Bowerman*, 2018 WL 3753054, at *2. And the class only reached the damages phase of the litigation after a liability ruling in their favor. The district court found that "[t]he overwhelming weight of the evidence supports a finding that FAS retained and, more often than not, *actually exercised* a right to control the manner and means of the vendors' work," while denying them overtime pay and expense reimbursements. *Bowerman*, 242 F. Supp. 3d at 916.

The panel reversed the careful work of the district court without identifying any error in its analysis, including its method of determining individual damages. The panel's departure from existing precedent warrants review by the full Court.

## CONCLUSION

For the foregoing reasons, Amici urge the Court to grant Plaintiffs-Appellants' Petition for Rehearing or Rehearing En Banc and for Certification of Questions to the California Supreme Court.

Dated: August 18, 2022          Respectfully submitted,

By: /s/ Lindsay Nako
    Lindsay Nako
    *Counsel of Record*

Lindsay Nako
Jocelyn D. Larkin
IMPACT FUND
2080 Addison Street, Suite 5
Berkeley, CA 94704
(510) 845-3473
lnako@impactfund.org

*Counsel for Amici Curiae Impact Fund,
Centro Legal de la Raza, Disability Rights
California, Housing and Economic Rights
Advocates, Law Foundation of Silicon
Valley, Lawyers' Committee for Civil Rights
of the San Francisco Bay Area, and Public
Advocates, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 18-16303, 18-17275

I am the attorney or self-represented party.

**This brief contains** | 4,139 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [      ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Lindsay Nako     **Date** | 8/18/22

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8**                                                                 *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 18-16303, 18-17275

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Brief of Amici Curiae Impact Fund et al. in Support of Plaintiffs-Appellants' Petition for Rehearing or Rehearing En Banc and for Certification of Questions to the California Supreme Court

**Signature** | s/ Lindsay Nako    **Date** | 08/18/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                          *Rev. 12/01/2018*